UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEVAR HENRY, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | 3:25-cv-380 (KAD) |
| | : | |
| JODI HILL-LILLY and ALYSSA | : | |
| BURROUGHS, | : | |
| *Defendants*. | : | |

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

The plaintiff, Levar Henry, filed this action as a prisoner in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS") against the Connecticut

Department of Children and Families ("DCF"), and against DCF Commissioner Jodi Hill-Lilly

and DCF Social Worker Alyssa Burroughs (the "DCF Defendants") in their individual capacities.

Compl., ECF No. 1.   He asserts claims under 42 U.S.C. § 1983 and under state law for damages.[1]

The Prison Litigation Reform Act requires that federal courts review complaints brought

by prisoners seeking relief against a governmental entity or officer or employee of a governmental

entity.   28 U.S.C. § 1915A(a).   Upon review, the Court must dismiss the complaint, or any

portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may

be granted, or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b).

---

[1] To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment.   *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

1

## I.    BACKGROUND[2]

The Court does not include herein all of the allegations from the Complaint but summarizes the facts to provide a context for this initial review.

As of October 2015, Evelyn Verner, the birth mother of Plaintiff's biological child Jada (who was born in Bridgeport, Connecticut, on June 1, 2015), has been subject to the supervision of DCF Commissioner Hill-Lilly.   Compl. ¶ 11.   Plaintiff was determined to be Jada's biological father in 2018 after a paternity test.   *Id.* ¶¶ 14–16.

In January 2019, while in DOCCS custody, Plaintiff petitioned the Connecticut Superior Court for visitation rights for Jada, and he petitioned the Connecticut probate court to have Jada's surname changed to "Henry."   *Id.* ¶ 17.   The superior court denied his petition for visitation on the grounds that it was inappropriate for a child to visit him at the DOCCS prison.   *Id.* ¶ 18.

Plaintiff wrote to the court to request a notice of appeal, but the court clerk allegedly insisted he reargue his case.   *Id.* ¶ 19.   At his reargument, Plaintiff explained that he would be on post-release supervision and needed an order for visitation to leave the State of New York or he would risk violation of his parole.   *Id.* ¶ 20.   The superior court left the case open so that Plaintiff could report to the superior court on a designated date after his release.   *Id.*   He alleges that DCF "negated" the proceedings.   *Id.*

In February or March 2020, after several court continuances due to Verner's failure to appear in court, the Connecticut Superior Court granted Plaintiff's petition for visitation.   *Id.* ¶¶ 22–24.   In March 2020, the Connecticut probate court granted Plaintiff's petition to change

---

[2] Plaintiff cites to exhibits A through K in his Complaint, but these exhibits were not submitted in any document for the Court's consideration.

Jada's surname on her birth certificate to "Henry." *Id.* ¶ 25. Plaintiff received a copy of the corrected birth certificate. *Id.* ¶ 26.

In May 2020, the Connecticut Superior Court found Verner in contempt for failing to follow the visitation order. *Id.* ¶ 27.

In December 2021, Jada and her sister Khloe spent the holidays with Plaintiff's family. *Id.* ¶ 28. In March 2021, Jada informed Plaintiff that she was afraid of a man associated with Verner known as "Popi." *Id.* ¶ 30. An order of protection was pending against Popi and another male associate of Verner known as Jefferys. *Id.*

In March 2021, Plaintiff and his son filed a petition for custody of Jada that included allegations about Jada's fear of Popi. *Id.* ¶¶ 32. Plaintiff heard from his son that Jada's living conditions were unacceptable. *Id.* ¶ 33.

Verner contacted Plaintiff's ex-wife about supplies for her daughters, Jada and Khloe. *Id.* ¶ 35. A stack of items was delivered to Verner, but she still failed to comply with the visitation order. *Id.* ¶ 36.

On June 1, 2021, Plaintiff's son attempted to deliver birthday gifts for Jada to Verner's door. *Id.* ¶ 38. Plaintiff's son was told Jada was at her aunt's house, although he reported that he heard Jada calling his name and Plaintiff's name. *Id.* ¶ 38. While putting the gifts and supplies back into his vehicle, Plaintiff's son saw Jefferys. *Id.*

In June 2021, Verner still refused to comply with the superior court orders. *Id.* ¶ 40. Nonetheless, DCF and probation ignored all of the alerts from the court. *Id.* Plaintiff maintains that DCF "disvalued" his diligence because he was a *pro se* petitioner. *Id.*

On June 19, 2021, Plaintiff was arrested by the State of New York and his family records, including Jada's footprints, were all displaced.  *Id.* ¶ 41.

On September 14, 2021, Plaintiff contacted the Connecticut superior court from a New York detention center to request a continuance for his hearing on his child custody petition scheduled for October 5, 2021.  *Id.* ¶ 42.

Plaintiff maintained contact with Jada during his DOCCS custody.  *Id.* ¶¶ 43–44.  During his incarceration, Plaintiff learned from Verner that Connecticut DCF Commissioner Hill-Lilly "insist[ed]" that there was no person named Levar Henry in existence.  *Id.* ¶ 44.

In August 2023, Plaintiff filed a DOCCS Proximity to Minor Child Transfer Request through his Offender Rehabilitation Coordinator ("ORC").  *Id.* ¶ 45.  He listed all of his minor children, including Jada, on his application.  *Id.*  Verner, who was under DCF supervision, agreed with the application.  *Id.*  Plaintiff was moved to incarceration in Westchester County to participate in the program to strengthen families.  *Id.*

From September 2023 to June 2024, Verner did not answer Plaintiff's phone calls to ask if she or her daughters, Khloe and Jada, were with her fiancé or Jefferys, *id.* ¶ 46, and she informed Plaintiff that Jada was at her aunt's house but would not provide him with the phone number for that aunt.  *Id.* ¶ 47.  Also from 2021 to 2024, Verner allegedly interfered with phone calls, text messaging, and visits between Jada and her paternal siblings.  *Id.* ¶¶ 48–51.

On July 8, 2024, Plaintiff had a scheduled call with DCF Social Worker Burroughs who advised him that Verner was being charged with neglect.  *Id.* ¶ 52.  She noted that Verner would not answer the telephone calls from DCF.  *Id.*  Plaintiff responded that he had spoken to Verner,

and that her daughters, Jada and Khloe, were at summer camp.  *Id.*  Burroughs was upset that Plaintiff had this information but she did not.  *Id.*

That day, Plaintiff was served with a petition filed by Burroughs and Commissioner Hill-Lilly in Connecticut Superior Court.  *Id.* ¶ 54.  It charged him with neglect for permitting a child to live under injurious conditions.  *Id.*  Burroughs had not advised Plaintiff during the phone interview that he would be a respondent in the neglect petition.  *Id.*

Plaintiff claims that the petition damages his reputation because it refers to him as an "alleged father," and it states:

> The Family has a history with DCF dating back to 2015.   There has been a total of 9 reports of which 2 were substantiated due to physical neglect and emotional neglect.

*Id.* ¶¶ 55, 57.  He notes several alleged inconsistencies in the petition: that Commissioner Hill-Lilly and Social Worker Burroughs spelled his name as "Lever Henry" instead of "Levar Henry" in their sworn statements, *id.* ¶ 59; that it named his daughter as "Jada Verner" rather than "Jada Henry"; and that it reported that DCF made "multiple attempts" to contact him at Sing Sing Correctional Facility.  *Id.* ¶¶ 56, 58.  But Plaintiff's Freedom of Information requests revealed that Burroughs made only one phone call to Plaintiff's facility to schedule the phone call with Plaintiff on July 8, 2024.  *Id.* ¶ 61.

In a second interview in July 2024, Plaintiff informed Social Worker Burroughs that he had not been housed at Sing Sing for a year.  *Id.* ¶ 58.  She also advised him that a birth certificate was "just a [piece of] paper" and thus implied that Jada's birth certificate did not establish Plaintiff's paternity.  *Id.* ¶ 63.  Burroughs informed Plaintiff that Verner had been incarcerated and that there was nothing he could do about Jada's custody because he was incarcerated.  *Id.*

Plaintiff requested her to contact his ex-wife to pick up Jada, but Burroughs replied that DCF would likely not honor his request due to the neglect charges.  *Id.* ¶ 69.

On July 30, 2024, Plaintiff was served with an "Order of Temporary Custody."  *Id.* ¶ 64. Plaintiff complains that that the order and motion still referred to "Jada Verner" rather than "Jada Henry," stated that Plaintiff had placed his child in immediate physical danger due to his DOCCS incarceration since 2021, falsely represented that there were "no court orders in effect concerning custody or visitation concerning said child[,]" and erroneously indicated Jada was the younger child rather than Khloe Jefferys.  *Id.* ¶¶ 64–65.  Plaintiff complains that he is being wrongly accused of committing assaults by the "father of [Verner's] younger child" because Plaintiff is incarcerated in New York and is not a resident of Connecticut.  *Id.* ¶¶ 65, 68.

Plaintiff claims that the falsehoods issued by DCF, including the misstatements about attempts to contact him to no avail, have negatively affected his parental rights concerning Jada and his relationships with his other minor children.  *Id.* ¶ 67.  He was allegedly issued a misbehavior report by DOCCS due to the statements by Commissioner Hill-Lilly and Social Worker Burroughs.  *Id.* ¶ 71.

A registered foster mother—who was raised by Plaintiff's grandmother—contacted DCF and offered to take in Jada; but DCF rejected this offer in favor of placing her with people not associated with Jada's family.  *Id.* ¶ 70.  Jada advised Plaintiff she did not have food at her placement.  *Id.*  Jada was moved to a new home, but Burroughs informed Plaintiff he was not allowed to call or write to his child at her new location.  *Id.*  Plaintiff was able to make phone calls to Jada on October 6, 2024, and October 13, 2024.  *Id.* ¶ 72.

On November 8, 2024, Burroughs contacted Plaintiff's ORC to advise that Plaintiff could speak with Jada at 4:30 P.M. on Fridays by calling Burroughs' telephone number.  *Id.* ¶ 73.   But when Plaintiff attempted to speak with Jada through Burroughs, he was still not able speak with Jada.  *Id.* ¶ 74.   On November 15, 2024, Plaintiff attempted to make contact with Jada again, but no one answered the phone call.  *Id.*

DCF has not responded to his grievances and information requests.  *Id.* ¶ 84.   Plaintiff has not spoken to Jada for several months while she is in DCF care.  *Id.* ¶ 85.   Plaintiff claims that DCF has blocked both he and his other children from speaking with Jada and is unwilling to facilitate his reunification with Jada.  *Id.* ¶¶ 74, 77, 81–82, 86–87.

## DISCUSSION

In his Complaint, Plaintiff asserts 28 causes of action, including violations of his rights under the U.S. Constitution, federal conspiracy statutes, federal criminal statutes, and state law.

Section 1983 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.  "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the

personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991))).   This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983.   "[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

### Section 1983 Claims Against DCF

Plaintiff brings claims under 42 U.S.C. § 1983 against the DCF.   Neither the State nor DCF, a state agency, is considered to be a person subject to suit under 42 U.S.C. § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).   Thus, all claims under § 1983 against DCF are dismissed as not plausible.

### Malicious Prosecution

In Count 1, Plaintiff asserts Defendants Hill-Lilly and Burroughs violated his Fourth and Fourteenth Amendment right to be free from malicious prosecution.

In Connecticut, "[a]n action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a

purpose other than bringing an offender to justice." *Bhatia v. Debek*, 287 Conn. 397, 404 (2008) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)). Here, Plaintiff appears to base his claim of malicious prosecution on the neglect proceedings initiated by the DCF Defendants concerning his minor daughter Jada. But child neglect proceedings are civil rather than criminal proceedings. *See In re Nicholas R.*, 92 Conn. App. 316, 321 (2005) ("Child neglect proceedings are civil proceedings."). "It is not settled in the Second Circuit whether the initiation of child neglect proceedings can give rise to a malicious prosecution claim." *Grullon v. Admin. For Child.'s Servs.*, No. 18-CV-3129, 2021 WL 981848, at *10 (S.D.N.Y. Mar. 16, 2021) (citing *Washington v. County of Rockland*, 373 F.3d 310, 315–16 (2d Cir. 2004)) (collecting cases). However, where a plaintiff is charged in a civil proceeding but is "never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment," there is no deprivation of liberty constituting a Fourth Amendment violation. *Id.* (quoting *Washington*, 373 F.3d at 317). There are no allegations that Plaintiff was detained, imprisoned, or seized by the DCF for the child neglect petition. Accordingly, the Court dismisses Plaintiff's malicious prosecution claims as not plausible. *See Pileggi v. Mathias*, No. 3:22-CV-1315 (AWT), 2024 WL 1344754, at *3 (D. Conn. Mar. 29, 2024) (dismissing malicious prosecution claim based on child neglect proceedings).[3]

### Supervisory Liability for Fourth and Fourteenth Amendment Violations

In Counts 2 and 3, Plaintiff appears to assert a claim of supervisory liability against

---

[3] The Court also notes that a money-damages claim challenging child custody proceedings may be barred by the domestic relations abstention doctrine, so long as there was no obstacle to the full and fair determination of the custody issue in the state court. *See Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) (domestic relations is "an area of law that federal courts and Congress leave almost exclusively to state law and state courts"); *Santos v. Syracuse Police Dep't*, No. 5:22-CV-1102 (MAD/ATB), 2022 WL 16949542, at *7, *9 (N.D.N.Y. Nov. 15, 2022) ("[A]ny claim of plaintiff predicated on the Family Court proceedings relating to the order of protection against him and the custody of his daughter would be subject to dismissal under the domestic relations abstention doctrine.").

Commissioner Hill-Lilly and Social Worker Burroughs for permitting DCF staff to violate his Fourth and Fourteenth Amendment rights.   Neither Count 2 or 3 indicates how Burroughs violated his Fourth and Fourteenth Amendment rights, and Count 3 does not describe conduct by any individual defendant.   For purposes of initial review, the Court construes Plaintiff's allegations to assert supervisory failures by Commissioner Hill-Lilly.   Plaintiff also alleges that Commissioner Hill-Lilly acted with indifference to the need for more or different staff training, supervision, and disciplinary investigations.   Compl. ¶¶ 19–21.

In *Tangreti v. Bachmann*, the Second Circuit held that "after *Iqbal*, there is no special rule for supervisory liability.   Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"   983 F.3d at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).   Knowledge that unconstitutional acts were occurring is insufficient to state a claim for supervisory liability.   "A supervisor's 'mere knowledge' . . . is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution."   *Id.* at 616–17 (quoting *Iqbal*, 556 U.S. at 677).   Thus, after *Tangreti*, Plaintiff cannot hold Commissioner Hill-Lilly liable for constitutional violation based on her alleged failure to supervise, train or discipline DCF staff.   Accordingly, the Court must dismiss Plaintiff's Counts 2 and 3 asserting supervisory liability against Hill-Lilly as not plausible.

The Court proceeds to consider whether Plaintiff has alleged any plausible direct involvement by Hill-Lilly and Burroughs in a constitutional violation.

**Conspiracy Under Sections 1983, 1985, and 1886**

In Count 4, Plaintiff claims that Defendants Hill-Lilly and Burroughs conspired to violate his Fourteenth Amendment rights.  Also, in Counts 25 and 26, Plaintiff asserts violation of his constitutional rights under 42 U.S.C. §§ 1985 and 1986.

Section 1985 has three subsections.  Section 1985(1) relates to conspiracies to prevent federal officials from performing their duties and has no relevance to this action.  Section 1985(2) and 1985(3) provide causes of action based on conspiracies intending to violate a plaintiff's civil rights.  *Mills v. Noonan*, No. 1:16-CV-984 (MAT), 2017 WL 1353479, at *10 (W.D.N.Y. Apr. 13, 2017).  Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and, mentioned in section 1985 of this title, are about to be committed and having power to prevent or aid in preventing the commission of same, neglects or refuses to do so . . . ."  42 U.S.C. § 1986.

Notably, Plaintiff has not plausibly alleged an essential element necessary to proceed on his claims of conspiracy under these federal statutes.  To state a viable conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted).  Allegations of conspiracy can be neither vague nor conclusory but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."  *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to

deprive the plaintiff of his constitutional rights" are insufficient).   Here, Plaintiff has not alleged non-conclusory facts to establish that Defendants entered into a meeting of the minds to violate his constitutional rights.

And even if he did allege sufficient facts to show a meeting of the minds, Plaintiff's conspiracy claims are barred under the intracorporate conspiracy doctrine because both Defendants are DCF employees.   The intracorporate conspiracy doctrine provides that officers, employees, and agents of a single corporate entity are legally incapable of conspiring together.   *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018) (noting that "because employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators").   However, there is an exception to this doctrine "when individuals are 'pursuing personal interests wholly separate and apart from the entity.'"   *Jordan v. Dep't of Corr.*, No. 3:23-CV-855 (VAB), 2023 WL 6541585, at *11–12 (D. Conn. Oct. 6, 2023) (quoting *Ali v. Connick*, 136 F. Supp. 3d 270, 282–83 (E.D.N.Y. 2015)).   Under the "personal stake exception," to sufficiently allege that individuals pursued personal interests wholly separate and apart from the entity, Plaintiff must show they worked against, and not for, departmental interests.   *See id.* at *12.   Simple allegations that the defendants were motivated by personal bias are insufficient to support the exception.   *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009).   Plaintiff in this case has not alleged facts suggesting that Defendants were acting other than in the course of their duties as DCF employees. As Plaintiff alleges no facts suggesting that Defendants were acting against departmental interests, the intracorporate conspiracy doctrine bars any conspiracy claims.

Accordingly, Plaintiff's conspiracy claims must be dismissed as not plausible.

12

**Sixth Amendment Violation**

In Count 5, Plaintiff claims that Defendants violated his Sixth Amendment rights.   The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.   Thus, the Sixth Amendment, by its own text, is limited to "criminal prosecutions."   *See Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases.").   Plaintiff's complaint challenges a civil action, and thus, his Sixth Amendment claims must be dismissed as not plausible.

**Fifth Amendment Violation**

In Count 6, Plaintiff asserts violation of the first clause of the Fifth Amendment, which provides in relevant part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]"   U.S. Const. amend. V.   This provision concerns criminal proceedings brought by federal prosecuting authorities and is inapplicable to this matter concerning a civil action in superior court.   Accordingly, the Court dismisses Plaintiff's sixth count as not plausible.

**Eighth Amendment**

In Count 7, Plaintiff claims violation of his Eighth Amendment protection against excessive bail, excessive fines, and cruel and usual punishment.   And in Count 21, Plaintiff asserts that his Eighth Amendment protection against cruel and usual punishment was violated by Defendants due to their intentional and fraudulent misrepresentations.

In the first instance, Plaintiff has not alleged facts to suggest that he is subject to excessive bail or excessive fines.

Nor do his allegations suggest that the Eighth Amendment protection against "cruel and unusual punishment" applies to his complaints against Commissioner Hill-Lilly and Social Worker Burroughs.   "The primary purpose of the Cruel and Unusual Punishments Clause has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes . . . ."  *Ingraham v. Wright*, 430 U.S. 651, 667 (1977).   No facts suggest that Defendants acted to impose any punitive measures on Plaintiff.   Indeed, even a termination of parental rights proceeding may not be considered punitive in nature because such proceedings "are designed to address the needs and welfare of children."   *See Roach v. Clark*, No. 5:15-CV-408 (LEK/ATB), 2015 WL 4067504, at *9 (N.D.N.Y. July 2, 2015) (collecting cases); *see also Skalaban v. Dep't of Child. & Families*, 314 F. Supp. 2d 101, 109 (D. Conn. 2004) (dismissing an Eighth Amendment claim based on an allegedly false report by the Connecticut DCF).   Accordingly, the Court dismisses as not plausible Plaintiff's Counts 7 and 21 for Eighth Amendment violations.

**Fourteenth Amendment Due Process Violations**

In Count 13, Plaintiff asserts violations of his Fourteenth Amendment rights.   The Court construes his complaint to allege Fourteenth Amendment procedural and substantive due process violations.

Parents have a fundamental liberty interest in the "care, custody, and control of their children."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000); *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).   However, the government

14

also has a compelling interest in the welfare of children, and the relationship between parent and child may be investigated and terminated by the state provided constitutionally adequate procedures are followed. *Santosky v. Kramer*, 455 U.S. 745, 766 (1982). Thus, "[n]otwithstanding the existence of this constitutional right, the right to family integrity does not include a constitutional right to be free from child abuse investigations." *Roach*, 2015 WL 4067504, at *10 (quotation marks and citation omitted). The due process rights available to parents in child custody matters have been analyzed under both the procedural and substantive due process framework. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 95–96 (N.D.N.Y. 2013). Procedural due process claims challenge the procedure by which a removal is effected, and substantive due process claims challenge the fact of the removal itself. *Id.* (citing *Bruker v. City of New York*, 92 F. Supp. 2d 257, 266–67 (S.D.N.Y. 2000)).

Procedural Due Process

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) (citation omitted). "[B]efore parents may be deprived of the care, custody, or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Schweitzer v. Crofton*, 580 F. App'x 6, 10 (2d Cir. 2014) (quoting *Southerland v. City of New York*, 680 F.3d 127, 149 (2d Cir. 2012)) (internal quotation marks omitted). Except in emergency circumstances, judicial process must be provided before removal of the child from his or her parent's custody. *Southerland*, 680 F.3d at 142 (citing *Kia P.*, 235 F.3d at 759–60). In emergency circumstances, "a child may be taken into custody by a

15

responsible State official without court authorization or parental consent." *Id.* (internal quotation marks omitted).   In such an emergency, the government must produce objectively reasonable evidence that harm was imminent.   *Id.*

Here, Plaintiff's allegations indicate that Defendants served him with a superior court child neglect petition and later a Temporary Order of Custody prior to Jada's foster care placements. *See* Compl. ¶¶ 54–64.   Although it is not entirely clear whether the neglect and/or custody proceedings remain ongoing in superior court, it appears that Plaintiff may have sustained a deprivation of his parental rights without a hearing.   Accordingly, the Court will permit Plaintiff to proceed on a Fourteenth Amendment procedural due process claim against Defendants Burroughs and Hill-Lilly[4] for further development of the record.

<u>Substantive Due Process</u>

"Parents have a substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state."   *Trombley*, 929 F. Supp. 2d at 95 (quoting *Southerland*, 680 F.3d at 142).   This right must be balanced by the "compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Id.* at 95–96 (quoting *McCaul v. Ardsley Union Free Sch. Dist.*, No. 12-CV-2300, 2013 WL 673751, at *1 (2d Cir. Feb. 26, 2013)).   "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective."   *Southerland*, 680 F.3d at 151 (quotation marks and citation omitted).

---

[4] Plaintiff's allegations indicate that both Hill-Lilly and Burroughs were involved in the neglect petition and Temporary Order of Custody.   *See* Compl. ¶¶ 54–59, 64, 68.

To state a claim for a substantive due process deprivation for a cognizable liberty interest, a plaintiff must allege facts indicating that defendants' "alleged acts . . . were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (citations and internal quotation marks omitted).   It is not enough that the government act be "incorrect or ill-advised"; it must be "conscience-shocking."   *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional."   *Tenenbaum*, 193 F.3d at 600 (quotation marks omitted).

The extent of Plaintiff's parental rights deprivation may not support a substantive due process violation.   *See Tenenbaum*, 193 F.3d at 600 (temporary separation of child from her parents to obtain assurance that child had not been abused was not shocking, arbitrary, and egregious to implicate substantive due process); *see Oglesby v. Eikszta*, 499 F. App'x 57, 60–61 (2d Cir. 2012) (finding no substantive due process violation where "plaintiffs admit that they never lost custody of any of their children"); *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 276 (2d Cir. 2011) ("Where there is no actual loss of custody, no substantive due process claim can lie." (citations omitted)).   But as he appears to have sustained a parental rights deprivation based on allegedly false accusations, Plaintiff may proceed with a substantive due process claim against Hill-Lilly and Burroughs for further development of the record.

<u>Intimate Association</u>

The Court also considers whether Plaintiff was deprived of his constitutional right to intimate association deriving under "both the First and Fourteenth Amendments."   *See Lowery v. Carter*, No. 07-CV-7684 (SCR), 2010 WL 4449370, at *2 (S.D.N.Y. Oct. 21, 2010) (citing *Roberts*

*v. U.S. Jaycees*, 468 U.S. 609, 617–19 (1984)); *see also Sanitation & Recycling Indus. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997).   The Supreme Court has observed that "freedom of association is among the rights least compatible with incarceration."   *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

Plaintiff alleges that Defendant Burroughs advised his ORC that Plaintiff could speak with Jada at 4:30 P.M. on Fridays by calling Burroughs's telephone number.   Compl. ¶ 73. Nonetheless, Plaintiff was allegedly unable to speak with Jada after November 2024, and he could not write to her at her new foster placement.   *Id.* ¶ 72.   Plaintiff asserts that "DCF is illegally taking and blocking Jada Henry from her father and siblings."   *See id.* ¶¶ 72, 73, 86.   As his allegations may support an inference that Burroughs has prevented him from having contact with Jada, Plaintiff is proceeding for violation of his constitutional right to intimate association against Burroughs for further development of the record.   Because Plaintiff's allegations do not suggest that Hill-Lilly had any direct role in preventing Plaintiff from speaking with or contacting Jada beyond her involvement with the superior court petition, the Court does not permit a constitutional intimate association claim to proceed against Hill-Lilly.

**Constitutional Defamation**

In Count 16, Plaintiff asserts that he was subject to constitutional defamation.   While defamation claims usually sound in state rather than constitutional law, a plaintiff may assert a procedural due process claim on the so-called "stigma plus" theory by alleging "a stigmatizing statement plus a deprivation of a tangible interest."   *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)); *see DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) ("'Stigma plus' refers to a claim brought for injury to one's

reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process.").

To succeed, "a plaintiff must show (1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). "This state-imposed alteration of status or burden must be '*in addition* to the stigmatizing statement.'" *Id.* (emphasis added) (quoting *Sadallah*, 383 F.3d at 38); *see also Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir. 1999) (defining "stigma plus" as the "loss of reputation coupled with some other tangible element" (internal quotation marks omitted)). "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (internal and external citations omitted) (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

Here, Plaintiff maintains that Hill-Lilly and Burroughs made harmful false statements— namely, that he is only Jada's "alleged father," that he was involved with several incidents of child neglect from 2015 to 2024, and that he is to blame for acts of assault by another individual and for placing his child in danger.   Compl. ¶¶ 54–58, 64, 65, 68.

For purposes of initial review, the Court concludes Plaintiff's allegations satisfy the first element of stigma.   *Sadallah*, 383 F.3d at 38; *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (noting that "a plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false").

As for the "plus" element, Plaintiff's complaint indicates that he sustained a temporary loss of child custody as a result of the defamatory statements and that he was unable to challenge the custody proceedings.   Compl. ¶¶ 63–64.   For purposes of initial review, the Court considers his complaint to have successfully alleged a plausible "material state-imposed burden or state-imposed alteration of [his] status or rights."   *Sadallah*, 383 F.3d at 38.   Accordingly, Plaintiff may proceed on a Fourteenth Amendment "stigma plus" claim against Burroughs and Hill-Lilly in their individual capacities for further development of the record.

**Equal Protection Violation under 42 U.S.C. § 1981**

In Count 17, Plaintiff claims Defendants violated his equal rights under 42 U.S.C. § 1981. The Court considers whether Plaintiff was subject to discrimination in violation of both § 1981 and the Fourteenth Amendment Equal Protection Clause.

Section 1981(a) prohibits "intentional racial discrimination" by public or private actors. *Brown v. City of Oneida*, 221 F.3d 329, 339 (2d Cir. 2000).   The purpose of § 1981 is "to protect from discrimination identifiable classes of people who are subjected to intentional discrimination because of their ancestry or ethnic characteristics."   *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).   To establish a claim under § 1981, a plaintiff must show that the defendant discriminated against the plaintiff on the basis of race, that the discrimination was intentional, and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions. *Tolbert v. Queens Coll.*, 242 F.3d 58, 69–70 (2d Cir. 2001).   A plaintiff bringing a § 1981 claim must allege with specificity "circumstances giving rise to a plausible inference of racially discriminatory intent."   *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994).   "Conclusory allegations" of racially motivated animus are insufficient.   *Id.*

Plaintiff alleges that DCF "disvalue[d]" him, asserted false information about him, and sought to punish him because he is a *pro se* petitioner, an incarcerated individual, and non-resident of Connecticut.  Compl. ¶¶ 40, 60, 65, 68.  But he alleges no facts to suggest that Defendants subjected him to intentional racial discrimination in order to sustain a claim under 42 U.S.C. § 1981.

Nor is there any suggestion Plaintiff was subjected to disparate treatment in violation of the Fourteenth Amendment Equal Protection Clause.  The Fourteenth Amendment Equal Protection Clause does not mandate identical treatment for each individual but "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).  A plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

Even when a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals."  *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012).  Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

21

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).   In the Second Circuit, class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."   *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).   The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain."   *See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *aff'd*, 639 F. App'x 44 (2d Cir. 2016)).

Plaintiff has not, however, alleged membership in a suspect class.   Prisoners in general are not a suspect class.   *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012).   Thus, Plaintiff must proceed as a "class of one."   But Plaintiff's complaint includes no allegations that he is being treated differently than any comparator so similar as to suggest that he was subject to disparate treatment absent a rational basis.   Plaintiff's complaint fails to support an inference that he was treated differently without a rational basis.

In sum, Plaintiff has raised neither a plausible equal protection claim under 42 U.S.C. § 1981 or the Fourteenth Amendment.

**Violation of Civil Rights Act of 1964**

In Count 24, Plaintiff asserts violations of his right to "equal protection and nondiscrimination" under the Civil Rights Act of 1964.   Plaintiff does not indicate what specific title of the Civil Rights Act he claims Hill-Lilly and Burroughs violated.   In light of his status as a self-represented party, the Court construes Plaintiff's allegations most broadly and reads Count

24 as a claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a), which prohibits discrimination in public accommodations on the basis of race, color, religion, or national origin. 42 U.S.C. § 2000(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined by this section, without discrimination on the ground of race, color, religion, or national origin.").    Nonetheless, Plaintiff's allegations afford no inference that his race or national origin were motivating factors in any alleged action by Hill-Lilly and Burroughs.   *See Pereira v. N.Y.C. Health & Hosps. Corp.*, No. 23-CV-10396 (LTS), 2024 WL 4149308, at *7 (S.D.N.Y. Sept. 9, 2024) (dismissing plaintiff's Title II claim as conclusory where plaintiff failed to allege "any facts showing that his race or national origin was a factor in any perceived deficiency of the health care that he received").

Accordingly, Count 24 is dismissed as not plausible.

**Thirteenth Amendment**

In Count 20, Plaintiff maintains that Defendants violated his Thirteenth Amendment protection against slavery and involuntary servitude.

The Thirteenth Amendment states, in pertinent part, that "[n]either slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."   U.S. Const. amend. XIII, § 1.   To state a Thirteenth Amendment claim, "a plaintiff must demonstrate that he has been subjected to 'compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'"   *Ford v. Nassau Cnty. Executive*, 41 F. Supp. 2d 392, 401 (E.D.N.Y. 1999) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)); *see also Muhammaud v.*

*Murphy*, 632 F. Supp. 2d 171, 176 (D. Conn. 2009) (requiring inmate to participate in programs is not work and does not constitute involuntary servitude); *see, e.g.*, *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (inmate stated plausible Thirteenth Amendment claim where he was allegedly compelled to work in the prison laundry use and threats of legal and physical coercion including being sent to the "hole" and subjected to 23 hour-per-day administrative confinement and shackles if he refused to work).

Plaintiff does not allege facts to support any inference he was subjected to compulsory labor or involuntary servitude.   Therefore, Plaintiff's Thirteenth Amendment claim must be dismissed.

### Violation of Criminal Statutes

In Counts 9 through 15, Plaintiff invokes violations of federal criminal statutes: 18 U.S.C. § 1341 (Fraud and Swindles), § 1346 (Definition of Scheme or Artifice), § 1349 (Attempt and Conspiracy), § 1018 (Official Certificates and Writings), § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information), § 1016 (Acknowledgment of appearance or oath), and § 1021 (Title Records).   It is well-settled that, unless specifically provided for, federal criminal statutes do not create private rights of action. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979); *see, e.g.*, *Schlosser v. Droughn*, No. 3:19-CV-1445 (SRU), 2021 WL 4263374, at *8 (D. Conn. Sept. 20, 2021) (no private cause of action under § 1341).   None of the criminal statutes cited in Plaintiff's counts afford a private right of action. Accordingly, all claims for violation of federal criminal statutes must be dismissed as not plausible.

**State Law Claims**

Plaintiff asserts numerous state law claims: intentional infliction of emotional distress (Count 18); fraud and misrepresentation (Count 19); criminal perjury in violation of New York State Penal Law and New York Civil Practice Law and Rule ("CPLR") § 2106 (Count 22); violation of Connecticut General Statutes § 52-571c for damages resulting from intimidations from bigotry or bias (Count 23); violation of his rights under the New York State Family Court Act (Count 27); and violation of Title 46b Family Law of the Connecticut General Statutes (Count 28). The Court also considers whether he may proceed on a claim of common-law defamation.

To the extent Plaintiff brings common-law tort claims against DCF, such claims are barred by the doctrine of sovereign immunity. *See Hanna v. Capitol Region Mental Health Ctr.*, 74 Conn. App. 264, 268–70 (2002) (holding that state agency is immune from suit under the common-law doctrine of sovereign immunity); *see, e.g.*, *Prigge v. Ragaglia*, 265 Conn. 338, 348–49 (2003) (holding that claims, including intentional infliction of emotional distress, were barred by the doctrine of sovereign immunity unless they are permitted by the claims commissioner).

<u>Intentional Infliction of Emotional Distress</u>

Under Connecticut law, intentional infliction of emotional distress claims require proof: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000). A defendant's conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by decent society." *Id.* (internal quotation marks

and citation omitted).   For initial pleading purposes, Plaintiff's allegations are sufficient to permit his state law intentional emotion distress claims to proceed against Hill-Lilly and Burroughs.

<u>Fraudulent Misrepresentation and Fraud</u>

A plaintiff alleging statutory or common-law fraud must also comply with Federal Rule of Civil Procedure 9(b), which requires a party to state the circumstances constituting fraud "with particularity."   Fed. R. Civ. P. 9(b).   "Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("[T]he 'complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989))).

Although a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendants had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (holding that an inference of scienter must be supported by "ample factual basis").

Under Connecticut law, there are four elements of common-law fraud:

Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end

26

designed . . . .   The elements of a fraud action are: (1) a false representation was
made as a statement of fact; (2) the statement was untrue and known to be so by its
maker; (3) the statement was made with the intent of inducing reliance thereon; and
(4) the other party relied on the statement to his detriment . . . .

*Rodriguez v. Fox*, No. 3:23-CV-823 (SVN), 2024 WL 1330831, at *4 (D. Conn. Mar. 28, 2024)

(citing *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 114 (D.

Conn. 2010)).

    Even assuming the complaint satisfies Federal Rule of Civil Procedure 9, Plaintiff has not

alleged facts to suggest that Defendants made a fraudulent statement to induce him to act upon it,

or that acted upon their fraudulent representation to his injury.   Accordingly, the Court dismisses

this claim as not plausible.

    <u>Defamation</u>

    As Plaintiff asserts that he is subject to defamation, the Court considers whether he may

proceed on a claim of common-law defamation against Hill-Lilly and Burroughs.   A defamatory

statement is a "communication that tends to harm the reputation of another as to lower him in the

estimation of the community or to deter third persons from associating or dealing with him."

*Bailey v. Nexstar Broadcasting*, *Inc.*, No. 3:19-cv-671 (VLB), 2020 WL 1083682, at *5 (D. Conn.

Mar. 6, 2020).   Thus, "[t]o establish a prima facie case of defamation, the plaintiff must

demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory

statement identified the plaintiff to a third person; (3) the defamatory statement was published to

a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."

*Simms v. Seaman*, 308 Conn. 523, 547–48 (2013).   The test of a defamation complaint's

sufficiency is "whether it is detailed and informative enough to enable [a] defendant to respond."

*Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986).   "To be actionable, the statement in

question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020). It is well settled that "under the common law, truth is an affirmative defense to defamation." *Gleason v. Smolinski*, 319 Conn. 394, 431 (2015).

Plaintiff's allegations concerning false statements about his involvement in child endangerment are sufficient for purposes of initial review to permit defamation claims to proceed against Hill-Lilly and Burroughs for further development of the record.

<u>Perjury under New York Penal Law and CPLR</u>

Plaintiff seeks damages for alleged perjury by Defendants in violation of the New York Penal statutes and CPLR § 2106. But there is no private right of action for perjury under New York law. *See Abrahams v. Inc. Village of Hempstead*, No. 08-CV-2584 (SJF/WDW), 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009) (holding that dismissal of civil suit for perjury was proper because there is no private right of action for perjury under New York law); *McFadden v. Ortiz*, No. 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (dismissing claim to enforce New York criminal statutes because "there is no private right of action to enforce either state or federal criminal statutes. Therefore, even assuming, *arguendo*, that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York [c]riminal [l]aw"); *Johnson v. Allick*, No. 18-CV-7171 (MKB), 2019 WL 569106, at *5 (E.D.N.Y. Feb. 12, 2019) ("As a general matter . . . crimes are prosecuted by the government, not by private parties."). Such claims are dismissed as not plausible.

<u>Connecticut General Statutes § 52-571c</u>

In Count 23, Plaintiff asserts a claim under Connecticut General Statutes § 52-571c, which provides:

> Any person injured in person or property as a result of an act that constitutes a violation of section 53a-181j, 53a-181k or 53a-181l may bring a civil action against the person who committed such act to recover damages for such injury.

Sections 53a-181j, 53a-181k, and 53a-181l are criminal statutes that prohibit intimidation based on bigotry or bias "motivated in whole or in substantial part by the actual or perceived race, religion, ethnicity, disability, sex, sexual orientation or gender identity or expression of such other person." Plaintiff has failed to plead facts sufficient to suggest Defendants intended to intimidate or harass him on the grounds provided in sections 53a-181j, 53a-181k, and 53a-181l. In addition, he has not pleaded facts to reflect that Defendants caused physical injury to him or a third person, as required by section 53a-181j. Nor has he alleged facts to support any inference that Defendants made physical contact with him or damaged or threatened to damage any real or personal property, as required by sections 51-181k and 51-181l. Accordingly, Count 23 is dismissed. *Gorawara v. Caprio*, No. 3:19-CV-756 (MPS), 2020 WL 5097488, at *5 (D. Conn. Aug. 28, 2020) (dismissing claim under section 52-571c due to plaintiff's failure to allege facts to satisfy the requirements of sections 53a-181j, 53a-181k, and 53a-181l).

<u>New York Family Act and Connecticut General Statutes Title 46b Family Law</u>

In Counts 27 and 28, Plaintiff asserts violation of the New York Family Act and Connecticut General Statutes Title 46b Family Law. Plaintiff has not alleged, however, facts to describe violation of any specific statutory provision. And this Court's research did not reveal any private right of action afforded under the New York Family Act or Connecticut General

Statutes Title 46b.   Plaintiff cannot merely make a generalized reference violation of a statutory act to state a plausible claim for relief.   *See Gawlik v. Reis*, No. 3:23-CV-1194 (OAW), 2025 WL 744270, at *2 (D. Conn. Mar. 7, 2025); *see also Burke v. Lamont*, No. 3:22-CV-475 (OAW), 2022 WL 3997549, at *14 (D. Conn. Sept. 1, 2022) ("Plaintiff cannot mention a claim without providing factual support for that claim.").   Accordingly, the Court dismisses Plaintiff claims in Counts 27 and 28 as not plausible.

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's individual capacity claims for (1) violation of Fourteenth Amendment procedural due process and substantive due process against Commissioner Hill-Lilly and Social Worker Burroughs; (2) violation of his First and Fourteenth Amendment right to intimate association against Social Worker Burroughs; (3) Fourteenth Amendment stigma-plus violation against Commissioner Hill-Lilly and Social Worker Burroughs; (4) state common-law intentional infliction of emotional distress against Commissioner Hill-Lilly and Social Worker Burroughs; and (5) state common-law defamation against Commissioner Hill-Lilly and Social Worker Burroughs.   This initial review order permits these claims to proceed without prejudice to a motion to dismiss.

All other claims are DISMISSED.   **The clerk is instructed to terminate DCF as a defendant in this action.**

If Plaintiff believes he can allege facts to cure the deficiencies identified in this ruling, he may file an amended complaint on or before **September 14, 2025**.   An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made

in the original complaint in evaluating any amended complaint.

(2) The clerk shall send a waiver of service of process request packet containing the complaint to Defendants Commissioner Jodi Hill-Lilly and Social Worker Alyssa Burroughs at the Connecticut Department of Children and Families, 505 Hudson Street, Hartford, CT 06106 by **September 4, 2025**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.   If a Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the Office of the Attorney General.

(4) Defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.   If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above.   Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **February 12, 2026**.   Discovery requests should not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.   The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **March 12, 2026.**

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.   If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the Court.   **Failure to do so may result in the dismissal of the case.**   Plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.   He should also notify the defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.   Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court.   D. Conn. L. Civ. R. 5(f).   Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 14th day of August, 2025, at Bridgeport, Connecticut.

   /s/ Kari A. Dooley
Kari A. Dooley
United States District Judge